*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0322P (6th Cir.)
File Name: 02a0322p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

CHARTER TOWNSHIP OF
MUSKEGON,
        *Plaintiff-Appellant,*

        *v.*

CITY OF MUSKEGON,
        *Defendant-Appellee.*

No. 00-2472

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 00-00717—Robert Holmes Bell, Chief District Judge.

Argued: May 1, 2002

Decided and Filed: September 19, 2002

Before: SILER and CLAY, Circuit Judges;
OBERDORFER, District Judge.

———————————

*The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

1

———————————

**COUNSEL**

**ARGUED:** Philip A. Grashoff, Jr., VARNUM, RIDDERING, SCHMIDT & HOWLETT, Grand Rapids, Michigan, for Appellant.   G. Thomas Johnson, PARMENTER O'TOOLE, Muskegon, Michigan, for Appellee. **ON BRIEF:** Philip A. Grashoff, Jr., VARNUM, RIDDERING, SCHMIDT & HOWLETT, Grand Rapids, Michigan, for Appellant.   G. Thomas Johnson, PARMENTER O'TOOLE, Muskegon, Michigan, for Appellee.

CLAY, J., delivered the opinion of the court, in which OBERDORFER, D. J., joined.   SILER, J. (pp. 17-18), delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

CLAY, Circuit Judge.   Plaintiff, Charter Township of Muskegon, appeals from the district court's order entered on November 13, 2000, denying its motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(5), and *sua sponte* dismissing in its entirety this action brought against Defendant, the City of Muskegon, for lack of subject matter jurisdiction.   For the reasons set forth below, we **REVERSE** the district court's order as to the lack of subject matter jurisdiction, and **REMAND** the case to the district court for a hearing on the merits of Plaintiff's Rule 60(b) motion.

**BACKGROUND**

In 1958, the Charter Township of Muskegon, Michigan ("the Township") issued revenue bonds to finance the

remand for such a hearing. The Township does not explain what evidence it would use to refute any of the previous determinations by the court. Therefore, I would find that the district court has made its ruling under Rule 60(b) and that it did not abuse its discretion in denying the relief requested. Thus, I would affirm the alternative decision by the district court. In my opinion, such a result does not contradict the decision in *Rogers.*

construction of the Muskegon Township Water Distribution System No. 2. The Township went into default, and in 1964, certain out-of-state bondholders filed a diversity action in the United States District Court for the Western District of Michigan in order to protect their interests. The case was docketed as No. 4731. Both the Township and the City of Muskegon, Michigan ("the City") were named as defendants.

A trial was held in 1969. Excerpts from the proceedings over which District Judge W. Wallace Kent presided indicated that the parties were seeking to reach a settlement and that it was "understood that the decree [settlement] may include a provision that upon retirement of all the bonds and upon payment of all the bonds and upon payment of all the other obligations of the Township system, that the Township system will then become merged into and become part of the water system of the City of Muskegon." (J.A. at 78-79.) Significant to the matter at hand, the excerpts from the proceedings also indicate that the following colloquy took place:

THE COURT: Mr. Frederick, did you have something to say?

FREDERICK: Sir, going back to your last statement on the City's assumption of the ownership of the system, should we have the words, "existing bond issue."

THE COURT: Yes, existing bond issue.

FREDERICK: There may be more issued in the future, and this could go on for ever and ever.

THE COURT: Everything as to the bond issue, reference is made to that which is the subject of the lawsuit and no other bond issue. And no obligations except those required in order to remedy the default,

except as the income of the – well, no, I think we can leave it right there, because from then on you are the operators. So when those obligations are liquidated, then the system becomes part of the City system. It is merged into it.

KNUDSON:    Okay, they take over the assets and liabilities.

THE COURT:    Liabilities and everything; it all becomes part of the City system.

(J.A. at 79.)

On June 15, 1972, judgment was entered by Judge Kent. The judgment, which provided a method for ensuring that the bonds would be paid, resulted from efforts by the Township and the City to reach a settlement. The judgment ordered the City to assume operation of the water system in the capacity of trustee and to loan sufficient funds to the water system to cure any default in its bonded obligations. Paragraphs 7 and 12 of the judgment are relevant to this case and provide, respectively, that

[t]he rates and charges of the township customers shall become uniform with the rates and charges throughout the City when *all the outstanding bonds have been fully paid for the existing bond issue* and the City has been fully reimbursed of any monies it may have obliged to loan to the Muskegon Township Water Distribution System No. 2.

*    *    *

The City's trusteeship and its obligation to maintain books and records shall continue until *all existing bond and other obligations* of the System, including obligations due the City, are paid in full, at which time title to the said Muskegon Township Water Distribution System No. 2 and any future extensions thereto shall vest

---

**CONCURRING IN PART, DISSENTING IN PART**

---

SILER, Circuit Judge, concurring in part and dissenting in part. I concur with the conclusion and reasoning of the majority opinion on whether the district court had jurisdiction. In short, I agree that there was jurisdiction to consider the motion under Fed. R. Civ. P. 60(b)(5). However, I dissent from the decision that the matter should be remanded for further proceedings.

Admittedly, *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 917 (6th Cir. 1986), states that "if a court does not have jurisdiction, *ipso facto*, it cannot address the merits of a case." However, we now hold that the district court had jurisdiction in the case. The court made an alternative ruling, called *dicta* by the majority opinion, that if jurisdiction were present, then it would still deny the motion to relieve the Township from a final judgment.

The district court set out valid reasons why it would deny the motion. First, the argument by the Township that its financial health had changed to such a degree that the 1972 consent judgment should be set aside was insufficient to reverse the intent of the judgment. It found no inequity in the transfer of the water system to the City. Moreover, the district court decided that the Township had not filed its motion within a reasonable time because the 28-year delay in filing the motion was well beyond the time limitation contemplated by Rule 60(b). It concluded that the City would be extremely prejudiced if the court revisited the matter after the City had relied upon the judgment for almost 30 years absent any challenge by the Township.

Although the Township wants the matter to be remanded for a hearing on the merits of the motion, the court has already made its ruling. It would be an exercise in futility to

prevent suit in federal court against municipal subdivisions of a state, as is the case here. *See Lawson v. Shelby County, Tenn.*, 211 F.3d 331, 335 (6th Cir. 2000).

Having concluded that the district court erred in finding that it did not have jurisdiction to hear the Township's motion brought under Rule 60(b)(5), the question becomes whether to consider district court's ruling, albeit made in *dicta*, that the Township would not have prevailed with its motion in any event, or whether to send the matter back to the district court with instructions for the court to hold a hearing on the motion. The Township contends that the district court inappropriately addressed the merits of the case after ruling that it did not have jurisdiction to hear the matter, particularly without hearing any evidence on the merits of the motion. The Township relies upon *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 917 (6th Cir. 1986), wherein this Court held that "if a court does not have jurisdiction, *ipso facto*, it cannot address the merits of a case." We agree with the Township, and therefore find that the Township should be heard before the district court adjudicates the motion.

## CONCLUSION

For the above stated reasons, the district court's order dismissing Plaintiff's claim is **REVERSED** and the case is **REMANDED** with instructions for the court to hold a hearing on the merits of Plaintiff's Rule 60(b) motion.

in the City of Muskegon and shall be merged into the City Water System. Rates and charges shall thereafter be uniform throughout the City and Township except where a differential is justified as hereinbefore provided.

(J.A. at 77-78; emphasis added.)

The City made its final payment on the 1958 bonds in May of 1998. At that point, all debts and obligations existing in 1972 were paid in full, and according to the City, it automatically acquired title to the system at that time. In a June 30, 1998, letter from the City to the Township, the parties attempted to negotiate a new water service agreement. In the interim, the arrangement that was in place prior to the last bond payment by the City was continued. Then, on August 29, 2000, after no agreement could be reached, the City gave notice to the Township that effective September 29, 2000, it would assume ownership and operation of the water system in accordance with the 1972 judgment. The Township responded by filing a Rule 60(b) motion in district court under the 1972 case number to enjoin the City from assuming ownership. The motion was, however, docketed by the clerk as a new case and given a new case number.

On October 4, 2000, a hearing was held by the district court, Judge Bell, presiding, regarding the Township's request for injunctive relief. The court *sua sponte* expressed concern regarding its jurisdiction given that the out-of-state bondholders were no longer parties to the action, and neither diversity jurisdiction nor federal question jurisdiction appeared to be present. The court instructed the parties to brief the issue, and took the matter under advisement. Thereafter, on November 9, 2000, the district court entered an opinion and an order wherein the court ruled "that the prior judgment vesting title of the Muskegon Township Water Distribution System must stand," that it did not have "subject matter jurisdiction over the present controversy of rate setting, and [that] the parties should seek redress in the appropriate state forum on those issues." (J.A. at 76-87.)

In *dicta*, the district court determined that even if it did have jurisdiction over the matter, it would deny the Township the relief that it was seeking. The court began by noting that the Township was seeking to revisit the 1972 judgment under Federal Rule Civil Procedure 60(b)(5), which allows a court to relieve a party from a final judgment when "'the judgment has been satisfied, released, or discharged, or . . . it is no longer equitable that the judgment should have prospective application.'" (J.A. at 83.) The court noted that any motion brought under this Rule "'must be made within a reasonable time,'" and that the Township's motion some twenty-eight years after judgment was entered was not within a reasonable time, nor did the judgment rise to the level of inequity necessary for the court to revisit it. (J.A. at 83-84.) The district court opined that

> [t]he Township seems to want to have its cake and eat it, too. Having struck a bargain with the City in 1972 to save the Township from financial default, it now wishes to retain the City's benefit of the bargain. In dismissing the current case, this Court allows the Township to pursue its aims in the appropriate forum – the courts of the State of Michigan, while at the same time ruling that the 1972 judgment stands.

\* \* \*

A court should engage in post-judgment consideration of the equities of the judgment "only under circumstances when the judgment involves prospective obligations and effects requiring ongoing court supervision or execution." The judgment in this case does not involve prospective obligations, nor does it require ongoing court supervision. The judgment was fully executed in 1998 when the original bondholders were repaid, and title to the water system vested in the City. Further arbitration contemplated by the judgment concerning rates can be done through the appropriate state forum.

280 F.3d at 271 ("This court has held that '[t]he definitional limitation in subsection (5) is significant in that it empowers a court to modify a judgment only if it is 'prospective,' or 'executory.'").

The district court viewed this action as completely divorced from the original suit, finding that it lacked jurisdiction because the parties were not diverse and no federal question was involved. The court relied on *Evans v. City of Chicago*, 10 F.3d 474 (1993), to illustrate why it could not exercise continuing jurisdiction over the matter. The district court's reliance on *Evans* is misplaced.

In *Evans*, the court reasoned that "the district court's authority to adopt a consent decree comes only from the statute which the decree is intended to enforce, not from the parties' consent to the decree." *Id.* at 478. (internal quotation marks and citation omitted). Because the federal law upon which the original injunction was based had changed, the original injunction had no force and there was no reason for the federal court to continue enforcement of the consent decree. *See id.*; *see also Sweeton v. Brown, Jr.*, 27 F.3d 1162, 1166 (6th Cir. 1994) ("As in *Evans,* there is no federal interest here. Injunctions may be modified 'when the statutory or decisional law has changed to make legal what the decree was designed to prevent.' Here, the decisional law has changed so that the enjoined behavior, which once *might* have been a violation of federal law, is no longer a matter of federal law at all.") (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992)). In other words, in *Evans*, the court found that it could not monitor a consent decree because the law upon which the decree was based had changed, leaving nothing to monitor. That is not the case here. Finally, the district court's reliance on *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984) is misplaced inasmuch as in *Pennhurst* the Supreme Court held that the Eleventh Amendment prohibits a federal court from ordering state officials to conform their conduct to state law; however, it is well established that the Eleventh Amendment does not

the district court had jurisdiction when the suit was filed, it has jurisdiction to entertain a Rule 60(b) motion. This jurisdiction is not divested by subsequent events."

However, the district court may need independent jurisdictional grounds if it does anything more than relieve a party from a judgment already rendered and entered. The jurisdiction available for a Rule 60 proceeding will not suffice for anything more than relief from the judgment, because Rule 60 does not authorize a court to grant any affirmative relief.

12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 60.61 (3d ed. 1997) (footnote omitted).

It therefore appears by reading *Moore's Federal Practice* in connection with the above jurisprudence that so long as the Rule 60 claim is one which seeks relief from judgment, it is not considered an independent claim, and the district court has continuing jurisdiction; however, even where an "independent action" is concerned, so long as the original case was brought before the district court and does not seek "reopening of the dismissed suit," jurisdiction is present.

## C.   Application to the Matter at Hand

In this case, the Township filed what it thought to be a motion under Rule 60(b)(5) seeking to enjoin the City from allegedly violating the terms of the 1972 judgment and for other relief such as preventing the City from taking ownership of the water distribution system and setting water rates. The 1972 judgment, pursuant to paragraphs seven and twelve as noted above, clearly provided the terms as to when ownership of the water system would be vested with the City. As a result, the district court erred in finding that the Township's motion was anything other than a motion for relief from judgment under Rule 60(b) for which it had continuing jurisdiction. *See* 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 60.61 (3d ed. 1997); *see also Coltec*,

(J.A. at 85-87 (citation omitted).)

The Township filed the instant appeal from the district court's order, and also moved before this Court for injunctive relief pending appeal. In so moving, the Township requested that the City be enjoined from: (1) taking any action to assume or exert ownership of Township Water Distribution System No. 2, including setting water rates for Township residents; (2) taking control of the assets of the system; (3) making any decisions associated with connections and expansions to the system without the Township's approval; (4) taking any action that would affect the Township's rights in the system including retiring the remaining outstanding obligations of the system; and (5) violating any other term of the 1972 judgment. In an order filed on January 26, 2001, this Court denied the Township's motion for an injunction pending appeal, finding that the four-factor test used to determine whether an injunction should issue did not weigh in favor of the Township's request.

The Township's appeal is now before the Court, wherein the Township argues that the sole issue on appeal is whether the district court erred in finding that it lacked subject matter jurisdiction over the Township's case. The Township contends that because the district court held that it lacked jurisdiction to hear the matter, the court improperly ruled, albeit in *dicta*, upon the merits of the Township's request for relief from judgment. As a result, the Township urges this Court to reverse the district court's decision holding that it lacked subject matter jurisdiction, and remand the case for a hearing on the Township's claim for relief from judgment under Rule 60(b).

## DISCUSSION

We review a district court's decision regarding subject matter jurisdiction *de novo*. *See Green v. Ameritech*, 200 F.3d 967, 972 (6th Cir. 2000). We review a district court's decision on a Rule 60(b) motion for an abuse of discretion.

*See Futernick v. Sumpter Township*, 207 F.3d 305, 313 (6th Cir. 2000).

## A.    District Court's Opinion

The district court recognized that for purposes of federal court jurisdiction, diversity of citizenship is determined at the time that the action is commenced, and that subsequent changes in citizenship cannot serve to divest the court's jurisdiction over the matter. Despite this rule of law, the district court found that it did not have jurisdiction over the matter at hand because it viewed the Township's actions here as "a new suit." The court noted the two parties present in this suit were the non-diverse defendants in the original suit, and that the subject matter of the instant claim was different from that in the original suit inasmuch as the original suit involved the protection of the bondholder's rights while the matter at hand involves the ownership of the water system.

In finding that it did not have subject matter jurisdiction over the matter, the district court first considered the Township's claim that under the terms of the 1972 judgment, title to the water system would not vest in the City until all financial obligations incurred in the course of managing the system were paid, including the debt incurred as a result of the 1994 extension. After examining paragraphs seven and twelve of the 1972 judgment, and after considering the parties' colloquies with Judge Kent, the district court found it "clear that the intent of the Court and the parties was that at the date the original bonds were paid off, the entire system, including any new bond obligations, would transfer to the City." According to the district court, given the fact that the judgment was self-executing, title to the water system had vested in the City and was not open to further discussion.

The district court therefore concluded that because the Township's request for relief was, in effect, a new action in which neither diversity jurisdiction nor federal question

*Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944)).

Indeed, as *Moore's Federal Practice* states:

An independent action to set aside a judgment needs, because it is "independent," its own jurisdictional basis. However, this is usually not a problem when the action is filed in the same court that rendered the judgment. According to the 1884 United States Supreme Court decision in *Pacific RR of Missouri v. Missouri Pacific Ry. Co.*, when an independent action for relief from the judgment is brought in the same court that rendered the judgment, the rendering court has "ancillary jurisdiction" to entertain the action. According to the Court, this "ancillary jurisdiction" is broad enough so that, even when the original basis for federal jurisdiction no longer exists, such as when diversity has been destroyed or the issue to be litigated in no longer a federal question, the district court that rendered the judgment maintains jurisdiction to hear an action to set that judgment aside. Modern courts have generally accepted this ruling without question. Even the United States Supreme Court, in ruling that courts that render judgments of dismissal do not have "ancillary" jurisdiction to enforce any settlement agreement that prompted the dismissal, has taken care to note that a different rule, a rule that jurisdiction does exist, applies when the only relief that the parties seek is "reopening of the dismissed suit."

12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 60.84[1][a] (3d ed. 1997) (footnotes omitted).

In this regard, *Moore's Federal Practice* also states:

It has been long established that no independent federal jurisdictional basis is needed to support a Rule 60(b) motion proceeding. A Rule 60(b) motion is considered a continuation of the original proceeding. "If

When the matter reached this Court, we rejected the contention that the federal courts had no jurisdiction over the bill because the plaintiff and several of the defendants were from the same State. We first noted that there was no question as to the court's jurisdiction over the underlying suit, and then said:

"On the question of jurisdiction the [subsequent] suit may be regarded as ancillary to the [prior] suit, so that the relief asked may be granted by the court which made the decree in that suit, without regard to the citizenship of the present parties. . . .  The bill, though an original bill in the chancery sense of the word, is a continuation of the former suit, on the question of the jurisdiction of the Circuit Court."

[*Pacific*, 111 U.S.] at 522.

Even though there was no diversity, the Court relied on the underlying suit as the basis for jurisdiction and allowed the independent action to proceed.  The Government is therefore wrong to suggest that an independent action brought in the same court as the original lawsuit requires an independent basis for jurisdiction.

*Beggerly*, 524 U.S. at 45-46.

The Court then noted that even though the government was wrong in suggesting that federal jurisdiction was no longer present because diversity jurisdiction no longer existed among the parties, "[t]his is not to say, however, that the requirements for a *meritorious* independent action have been met here." *Beggerly*, 524 U.S. at 46 (emphasis added). The Court found that "[i]ndependent actions must, if Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata." *Id.* (citing *Hazel-*

jurisdiction was present, subject matter jurisdiction was lacking. Specifically, the court opined:

It is true, as the Township points out, that diversity jurisdiction is determined at the time the action is commenced, and that subsequent changes in state citizenship will not affect the diversity of that action. Here, however, the Township has filed what can only be called a new action. Two of the original parties are in the present suit, but they were non-diverse defendants in the original suit. The subject matter is different as well. In the original suit, the issue was the protection of the rights of the bondholders. The ownership of the water system was only ancillary to that. Here, the Township is bringing suit making the ownership of the water system the primary reason to bring the suit. Yet ownership of the system was settled by the court order and agreement of the parties twenty-eight years ago. Were this court to revisit the matter in the absence of a clear Rule 60(B)(5) [sic] mandate, it would throw open the courthouse door to challenge any order of a court at any time.

(J.A. at 82.)  The district court then noted that precedent from the Seventh Circuit existed to support the conclusion that jurisdiction does not exist over a consent judgment where the grounds for federal jurisdiction have been abrogated. Quoting *Evans v. City of Chicago*, 10 F.3d 474, 481 (7th Cir. 1993), the district court opined that "'principles of respect for a coordinate sovereign (and in some cases the eleventh amendment) mean that federal courts should refrain from adjudicating claims under state law, whether raised directly or whether used as the springboards for other theories.'" (J.A. at 82.) The court found that the grounds for federal subject matter jurisdiction had "vanished" in this case, reasoning that "[a]part from the 1972 consent judgment there is neither diversity nor federal question jurisdiction. What remains is a local disagreement that on the face of the pleadings must turn to state law for succor." (J.A. at 82.) Relying on *Pennhurst State School & Hospital v. Halderman*, 465 U.S.

89 (1984), the court concluded that it could not interfere with what was a purely local disagreement between two state bodies.

## B. Rule 60(b) and the Relevant Jurisprudence

"'The general purpose of Rule 60(b) . . . is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done.'" *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 271 (3d Cir. 2002) (quoting *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978)). Rule 60(b) provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application . . . . The motion shall be made within a reasonable time, and for reasons (1), (2), and (3), not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subsection (b) does not affect the finality of judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from judgment, order, or proceeding . . . . Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

FED. R. CIV. P. 60(b). The 1946 amendment to the Rule (as the language currently reads) "made clear that nearly all of the old forms of obtaining relief from a judgment, *i.e., coram nobis, coram vobism, audita querela,* bills of review, and bills

in the nature of review, had been abolished. The revision made equally clear, however, that one of the old forms, *i.e.*, the 'independent action,' still survived." *United States v. Beggerly*, 524 U.S. 38, 45 (1998) (footnote omitted). The Advisory Committee notes illustrate the survival of the "independent action" in the 1946 amendment. *See id.* Specifically, the Advisory Committee notes state that "'[i]f the right to make a motion is lost by the expiration of the time limits fixed in these rules, the only other procedural remedy is by a new or independent action to set aside a judgment upon those principles which have heretofore been applied in such an action.'" *See id.* (quoting Advisory Committee's Notes on 1946 Amt. to Fed. Rule Civ. P. 60).

The *Beggerly* Court further expounded on the "independent action," as continued to be permitted under the 1946 amended rule, by relying on the case of *Pacific Railroad of Missouri v. Missouri Pacific Railway Co.*, 111 U.S. 505 (1884), which the Advisory Committee cited as an example of such a cause. *See Beggerly*, 524 U.S. at 45 & n.3. The *Beggerly* Court opined:

One case that exemplifies the category [of independent action] is *Pacific R.R. of Mo. v. Missouri Pacific R. Co.*, 111 U.S. 505 (1884).

In *Pacific* the underlying suit had resulted in a decree foreclosing a mortgage on railroad property and ordering its sale. This Court enforced the decree and shortly thereafter the railroad company whose property had been foreclosed filed a bill to impeach for fraud the foreclosure decree that had been affirmed. The bill alleged that the plaintiff in the underlying suit had conspired with the attorney and directors of the plaintiff in the subsequent suit to ensure that the property would be forfeited. The plaintiff in the subsequent suit was a Missouri corporation, and it named several Missouri citizens as defendants in its bill seeking relief from the prior judgment.