*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0059p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

EAST BROOKS BOOKS, INC., dba Getwell
Bookmart; AIRPORT ADULT THEATER; PETE
PATEL; LISA WRIGHT; STACY COLLINS;
BETTY POWERS,

                            *Plaintiffs,*

STEVE C. COOPER; SOUTHERN
ENTERTAINMENT MANAGEMENT CO., INC.,
dba Club Tiffany,

                          *Plaintiffs-Appellants,*

    *v.*

CITY OF MEMPHIS; W.W. HERENTON;
MELVIN BURGESS,

                          *Defendants-Appellees.*

No. 09-6254

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
Nos. 90-02874; 90-02956; 91-02097—Bernice B. Donald, District Judge.

Argued: January 13, 2011

Decided and Filed: February 24, 2011

Before: KENNEDY, CLAY, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** J. Michael Murray, BERKMAN, GORDON, MURRAY & DeVAN, Cleveland, Ohio, for Appellants. Thomas Roane Waring III, CITY ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellees. **ON BRIEF:** J. Michael Murray, Raymond V. Vasvari, Jr., BERKMAN, GORDON, MURRAY & DeVAN, Cleveland, Ohio, for Appellants. Thomas Roane Waring III, CITY ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellees.

    CLAY, J., delivered the opinion of the court, in which KENNEDY, J., joined. KETHLEDGE, J. (p. 14), delivered a separate opinion concurring in part and concurring in the judgment.

———————————

**OPINION**

———————————

CLAY, Circuit Judge.  Plaintiffs Steve C. Cooper and Southern Entertainment Management Company, Inc., appeal the denial of their motion for relief of judgment pursuant to Federal Civil Procedure Rules 60(b)(5) and (6).  At issue is a 1996 consent judgment declaring unconstitutional a 1991 city ordinance intended to regulate sexually-oriented businesses in Memphis, Tennessee.

For the reasons set forth below, we **AFFIRM** the decision of the district court.

**BACKGROUND**

**I.     The 1991 Memphis Ordinance**

In January of 1991, the City of Memphis ("Memphis" or the "City") promulgated an ordinance (the "Memphis Ordinance") that was intended to impose a licensing scheme on sexually-oriented businesses within Memphis.[1]  Memphis, Tenn., Code § 6-72.  The primary aim of the Memphis Ordinance was "to establish reasonable and uniform regulations to prevent the continued concentrations of sexually oriented businesses within the city."  *Id.* § 6-72-1.  On a more general level, the intent of the Memphis Ordinance was to "promote the health, safety, morals and general welfare of the citizens of the city."  *Id.*  The City was concerned about these adult businesses because it found that, especially in concentration, they caused serious secondary effects, including increased crime and neighborhood deterioration.  *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 222 (6th Cir. 1995).

The Memphis Ordinance contained several components.  Centrally, it required adult business operators and employees to obtain permits before conducting adult

———————————

[1]For the purposes of the Memphis Ordinance, sexually-oriented businesses include adult arcades, bookstores, video stores, cabarets, motels, movie and other theaters, escort agencies, nude modeling studios, "sexual encounter centers," and some adult telecommunications businesses.  Memphis, Tenn., Code § 6-72-2.  We have used the terms "adult business" and "adult establishment" interchangeably herein to refer to such a business.

business and it set forth the application requirements and time lines for obtaining those permits. The Memphis Ordinance outlined certain offenses and application deficiencies that would disqualify a person from receiving a permit and certain infractions that would be cause for the Director of Police Services ("Director") to either suspend or revoke a permit. The cost of the permit was initially set at $5,000 per business and $15 per employee.

If an adult business was owned or operated by a company, the Memphis Ordinance required each person with an interest in the business, no matter how small, to meet the permit requirements and be disclosed on an application.

The procedure for an adult business to appeal a denial, suspension or revocation of a permit was set out as follows: the applicant had ten days to file the appeal with the Director. The Director was required to schedule a hearing on the appeal within sixty days of filing. After the hearing, the Director was required to issue a decision within five days. During the foregoing period, the adult business would be allowed to continue to operate (absent certain exceptional circumstances). If the Director denied the appeal, then the applicant had the opportunity to appeal the decision, within thirty days, by petitioning a court of competent jurisdiction for a common law writ of certiorari. During the court appeal, the City was allowed to suspend operation of the business.

In addition, the Memphis Ordinance forbid certain types of acts and performances within adult establishments. It also subjected the businesses to periodic inspection by city agencies including the police and the health department. Furthermore, the Memphis Ordinance created zoning limitations for adult businesses, which limited their concentration and proximity to certain residential, cultural and social institutions. Notably, it did not ban the sale of beer at adult establishments.

## II.     The 1996 Consent Judgment

Plaintiffs Steve C. Cooper, et al. ("Cooper") operate adult businesses that would be regulated under the Memphis Ordinance. In November 1990, Cooper brought suit against the City in the United States District Court for the Western District of Tennessee,

facially challenging the constitutionality of the Memphis Ordinance. *See East Brooks Books*, 48 F.3d 220.[2] Cooper claimed that the Memphis Ordinance constituted an impermissible prior restraint on speech under the First Amendment.

On appeal, this Court held that: 1) the Memphis Ordinance failed to provide a method for prompt judicial review of adverse decisions, as required by the First Amendment; 2) the "shareholder disclosure" provision requiring applications for all people having an interest in an adult business was overly broad; 3) a provision under which a permit could be denied or suspended based on the Director's determination that a business was not operating in a "peaceful and law-abiding manner" was impermissibly vague; 4) the license fee was excessive; and 5) that the ordinance's amortization schedule violated both Tennessee state and local law. *East Brooks Books*, 48 F.3d at 224-28.

On October 21, 1996, the parties entered into a consent judgment, agreeing to adopt the decision of this Court as the final ruling and judgment as to the constitutionality of the Memphis Ordinance. As a result, though the Memphis Ordinance was never repealed, it was never enforced within Memphis and no adult establishment was ever required to apply for a permit. *See Entm't Prods., Inc. v. Shelby Cnty.*, 545 F. Supp. 2d 734, 751 (W.D. Tenn. 2008).

### III.     The 2007 Shelby County Ordinance

On September 10, 2007, Shelby County adopted the Tennessee Adult-Oriented Establishment Registration Act of 1998 (the "Act"), Tenn. Code Ann. §§ 7-51-1101 *et seq.*, through the promulgation of Ordinance 344 (the "County Ordinance"). Shelby Cnty., Tenn., Ordinance 344. Broadly, the Act sets forth the following requirements:

> It requires an adult-oriented establishment to obtain a license from the county's adult-oriented establishment board in order to operate. It further requires that all entertainers, employees, and escorts employed by

---

[2]The case was consolidated from four matters filed in the Western District of Tennessee challenging the Memphis Ordinance. The consolidated plaintiffs were East Brooks Books, Steven C. Cooper, and Southern Entertainment Management Company, Inc. Defendants were City of Memphis, Mayor W.W. Herenton and Police Director Melvin Burgess.

such an establishment obtain a work permit from the county.  The Act also imposes several regulations, including a prohibition against the serving or consuming of alcohol on the premises; a ban on the touching or the exposing of certain parts of the body; and a requirement that all performances occur on an 18-inch high stage and be at least six feet from any other entertainer, employee, or customer.

*Am. Show Bar Series, Inc. v. Sullivan Cnty*., 30 S.W.3d 324, 331 (Tenn. Ct. App. 2000) (citations omitted).

Under the Act, a license or permit applicant must provide general information concerning his identity and proof of age, and must pay an annual operating license fee of $500 or a work permit fee of $100.  For corporate applicants, the application must specify "the names and addresses of the officers and directors of the corporation, and the names and addresses of any persons holding fifty percent (50%) or more of the stock in the corporation."  Tenn. Code Ann. § 7-51-1105(7)(A).  The Act outlines additional requirements for licensing, creates disqualifying factors for permits and licenses, establishes an appeal procedure for denial of a permit or license, and requires inspection of adult establishments by various county agencies.

The County Ordinance took effect on January 1, 2008 and was subject to enforcement as of April 30, 2008.  Enforcement of the County Ordinance in Memphis was limited only by the Act's preemption clause, which specifies that, "if a city or other political subdivision in this state chooses to enact *and enforce* its own regulatory scheme for adult-oriented establishments and sexually-oriented businesses, then the provisions of this part shall not apply within the jurisdiction of such city or other political subdivision."  *Id.* § 7-51-1121(b) (emphasis added).

## IV.    Motion for Relief of Judgment

On October 9, 2008, Cooper filed a Motion for Relief of Judgment pursuant to Federal Rules of Civil Procedure 60(b)(5) and (6).  Cooper argues that, due to intervening changes in statutory and decisional law, the Memphis Ordinance no longer suffers from the constitutional defects that caused this Court to invalidate it and the parties should therefore be relieved of the judgment.

On September 28, 2009, the district court denied the motion. The district court held that, while the unconstitutionality of the provision in the Memphis Ordinance regarding judicial review had been rectified by intervening changes in the law, the ordinance still suffered from several defects which left it unconstitutional. The court further found that, while it might be possible to sever the provisions in the Memphis Ordinance regarding amortization and peaceful operation, it was not possible to sever the "shareholder disclosure" provision. The court also noted that the equities would not be served by granting the motion for relief, because Cooper failed to present any inequities in the status quo or any "public interest at stake . . . [but has] instead advanced a private business interest," to wit, to be governed by the less strict guidelines of the Memphis Ordinance instead of the more restrictive County Ordinance.

Cooper then filed this timely appeal and we now affirm the denial of his motion for relief.

## DISCUSSION

### I.     Subject Matter Jurisdiction

Defendants argue that this Court lacks jurisdiction to adjudicate the merits of this appeal because Plaintiff's claim raises no "case or controversy," and therefore any decision by this Court would constitute an "advisory opinion." Defendant further argues that Cooper lacks standing because he cannot show injury and, alternatively, because any relief that this Court could provide would not redress any injury that Cooper may claim.[3]

---

[3]Defendant also argues, for the first time on appeal before this Court, that the relief provided by the consent judgment moots the case. Though Defendant did not raise this argument below, we will consider it here. "[W]e are under a continuing obligation to verify our jurisdiction over a particular case." *In re Troutman Enterprises, Inc*., 286 F.3d 359, 364 (6th Cir. 2002). "The existence of subject matter jurisdiction may be raised at any time, by any party, or even *sua sponte* by the court itself." *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005) (internal quotation marks omitted).

Our jurisdiction continues unless the original case or controversy between the parties becomes moot, or unless "'the issues presented are no longer 'live' or parties lack a legally cognizable interest in the outcome.'" *Cleveland Branch, NAACP v. City of Parma, Ohio*, 263 F.3d 513, 530 (6th Cir. 2001) (quoting *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979)); *see, e.g., Parvati Corp. v. City of Oak Forest, Ill*., No. 09-1107, ___ F.3d ___ , 2010 WL 5185835, at *4 (7th Cir. Dec. 23, 2010) (dismissing for lack of jurisdiction a plaintiff's Rule 60(b) motion because the plaintiff no longer owned the property subject to the adverse zoning decision on which the suit was based). Defendant does not claim that any subsequent occurrence has extinguished the live controversy between the parties, other than the issuance of the consent decree, which cannot, in and of itself, create mootness. Thus, we find that the case is not moot.

We review this challenge to the district court's subject matter jurisdiction *de novo*, as a question of law. *See Charter Twp. of Muskegon v. City of Muskegon*, 303 F.3d 755, 759 (6th Cir. 2002); *RE/MAX Int'l, Inc. v. Realty One*, *Inc.*, 271 F.3d 633, 640-41 (6th Cir. 2001).

As outlined above, the instant motion arises from a 1996 consent judgment entered by the District Court for the Western District of Tennessee. We have held that a consent judgment is "essentially a settlement agreement subject to continued judicial policing." *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983); *accord Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1017 (6th Cir. 1994). Therefore, a district court may "1) retain jurisdiction over the decree during the term of its existence; 2) protect the integrity of the decree with its contempt powers; and 3) modify the decree should 'changed circumstances' subvert its intended purpose," even if it does not expressly reserve such power. *Vukovich*, 720 F.2d at 920 (citations omitted).

The rationale underlying Rule 60(b) would be severely compromised if the very existence of a final judgment automatically resulted in the extinguishment of an active "case or controversy," requiring the laying of a new jurisdictional foundation. Instead, it is settled law that "a Rule 60(b) motion is considered a continuation of the original proceeding. If the district court had jurisdiction when the suit was filed, it has jurisdiction to entertain a Rule 60(b) motion." *Charter Twp. of Muskegon*, 303 F.3d at 762 (internal quotations omitted).

Defendant does not dispute the district court's jurisdiction in Cooper's 1990 case, the action from which the now-challenged consent judgment arises. Therefore, there is no question that the district court continues to have jurisdiction over Cooper's Rule 60(b) motion, and this Court has jurisdiction on appeal from that action.

## II.       Motion for Relief of Judgment

A district court's interpretation of its consent judgment is reviewed for an abuse of discretion, *Huguley v. Gen. Motors Corp.*, 999 F.2d 142, 145-46 (6th Cir. 1993), as is a district court's decision to grant or deny a Rule 60(b) motion. *Thompson v. Bell*, 580

F.3d 423, 442 (6th Cir. 2009). Furthermore, "Rule 60(b) proceedings are subject to only limited and deferential appellate review." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

Federal Rule 60(b)(5) gives a court discretion to relieve a party from a final judgment if "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). In the case of a request to modify a consent judgment "that arguably relates to the vindication of a constitutional right," the party seeking relief "bears the burden of establishing that a significant change in circumstances warrants revision of the decree. If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 & n.7 (1992).

Rule 60(b)(6) further permits the court to grant a motion for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Supreme Court has held that relief under this section requires a showing of exceptional or extraordinary circumstances. *See Ackermann v. United States*, 340 U.S. 193, 202 (1950). We have set forth the additional requirement that "something more" than one of the grounds contained in subsections (1) through (5) be shown for relief under this section. *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989).

We will not grant relief from a consent decree for the mere convenience of a party. *Rufo*, 502 U.S. at 383. Instead, we proceed with the understanding that "modification of a consent decree is an extraordinary remedy that should not be undertaken lightly." *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 132 F.3d 1142, 1147 (6th Cir. 1997) (Jones, J., concurring).

Cooper argues that two intervening changes in statutory and jurisprudential law justify the Rule 60(b) relief that he seeks. First, Cooper points to the Supreme Court's decision in *City of Littleton, Colorado v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004), which held that normal state judicial review processes were adequate under the First

Amendment for the adjudication of claims under state "adult business" licensing ordinances, when such ordinances only required "compliance with neutral and nondiscretionary criteria." *Id.* at 784.

Additionally, in 2005, Tennessee amended its Code to modify the Tennessee common law writ of certiorari to include expedited review on request. The amended statute states:

> If the final decision of a board or commission revokes, suspends, or denies a license or permit that is required prior to engaging in conduct protected by the First Amendment to the Constitution of the United States, and either the petitioner or the respondent requests an expedited hearing, the court shall immediately grant the writ of certiorari, and shall hear the matter and issue its decision within forty (40) days of the court granting the writ of certiorari.

Tenn. Code Ann. § 27-9-111(e). Thus, Cooper argues and we have agreed, judicial review through the Tennessee writ of certiorari now fully complies with the promptness requirements of the First Amendment. *See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 466 F.3d 391, 396 (6th Cir 2006). Because our 1995 decision held the Memphis Ordinance unconstitutional based, in part, on the unavailability of prompt judicial review, Cooper now argues that the ordinance is no longer unconstitutional and the consent judgment should be lifted.

In denying Cooper's motion for relief, the district court found that, though intervening changes in law effectively cured the unconstitutionality of the Memphis Ordinance's appeals procedure, this did not justify relief from judgment because the Memphis Ordinance remained unconstitutional for three other distinct reasons—the overly broad "shareholder disclosure" provision, the vague "peaceful manner" provision, and the unlawful amortization clause.

In order to determine whether the remaining defective provisions were severable, the district court properly looked to Tennessee state law. *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772 (1988) (holding that "severability of a local ordinance is a question of state law . . . ."). In doing so, the district court acknowledged

that Tennessee law disfavors severance and limits the practice to striking only those features that, notwithstanding their absence, the court concludes the legislature still would have enacted the statute. *See Davidson Cnty. v. Elrod*, 232 S.W.2d 1, 2 (Tenn. 1950). A court's conclusion that the legislature would have enacted a statute absent an unconstitutional provision must be based on evidence that is obvious on the "face of the statute," *Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 466 (6th Cir. 1999); otherwise the court risks overstepping into functions reserved for the legislature.

Having outlined this legal framework, the district court found that the "peaceful manner" provision was severable, along with the amortization provision. The court found that the former could be severed because it was redundant to other provisions in the Memphis Ordinance (which enumerate infractions that would be considered cause for suspension or termination of a license), and that the latter could be severed because it was contrary to well-established zoning regulations in both Tennessee law and the Memphis city charter.

The district court nonetheless denied Cooper's motion for relief, finding that the shareholder disclosure requirement could not be severed. It further found that the equities did not favor relief from judgment, as Cooper did not show that the judgment created any inequity, but merely that he would prefer to be regulated under the Memphis Ordinance instead of the more restrictive County Ordinance.

Cooper now retorts by arguing that there is "nothing in the text of the ordinance to meaningfully distinguish the two provisions which [the district court] was willing to elide from the single provision which it found too integral to the law to be severed." Cooper supports this argument by citing to Section 6-72-4(A)(8) of the Memphis Ordinance, which states:

> Every permittee shall, before employing any person or using the services of an independent contractor in the operation of or entertainment at a sexually oriented business, secure from the director of police services an employee's permit authorizing such person to serve as an employee or independent contractor in the place of business of the sexually oriented business permittee. It is made the duty of the sexually oriented business permittee to ensure that each person so employed in permittee's place of

business has an employee's permit as above required, which permit must be upon the sexually oriented business premises at all times subject to inspection by the director of police services, or his or her duly authorized agents.

Memphis, Tenn., Code § 6-72-4(A)(8). Cooper claims that this section of the ordinance makes redundant the shareholder disclosure provision, thus rendering it severable under the same analysis that the district court employed when it severed the "peaceful manner" provision.

We find this argument to be flawed. Cooper acknowledges that Memphis has a legitimate interest in identifying those who are legally accountable for the operation of an adult business. *See also East Brooks Books,* 48 F.3d at 226. For the stated legislative purpose of the ordinance to be fulfilled—to regulate the secondary effects of these businesses and to control for their geographic concentration—it is essential that Memphis have information about, and regulatory powers over, the people who *control* adult businesses. Therefore, Memphis' purposes cannot be satisfied by disclosure of *employees and contractors* of adult businesses only, but requires the identification of a business's *owners and stakeholders*. Section 6-72-4(A)(8) does not compel disclosure of management and shareholders, and Cooper can point to no other section of the Memphis Ordinance that covers that field.[4]

Therefore, the district court's conclusion that the Memphis Ordinance, on its face, did not suggest that the shareholder disclosure provision could be severed was reasonable.

Cooper also fails to demonstrate that "applying [the judgment] prospectively is no longer equitable."[5] Fed. R. Civ. P 60(b)(5). In order to prevail under this prong of

---

[4]Although Cooper claims that, with the shareholder disclosure provision stricken, the Memphis Ordinance would still compel the identification of every person who is "legally accountable" for an adult business, he points to nothing in the ordinance, other than § 6-72-4(A)(8) for support. Yet neither that section, nor any other in the Memphis Ordinance, uses the phrase "legally accountable" or speaks to the disclosure of "legally accountable" parties.

[5]The concurrence suggests that a finding that the equities do not clearly favor relief of judgment is sufficient, alone, to justify denial of relief under Rule 60(b)(5). In a case such as this, where the equities do not clearly *disfavor* relief, but are equally balanced, we are not convinced that relief may be denied for

the Rule 60(b) requirement, Cooper would have to convince this Court that the City's decision to leave adult businesses alone to operate as they please, free from a restrictive licensing scheme, is somehow unfair or unjust to those businesses. This position is difficult to countenance straight-faced. Nor is it reasonable for Cooper to suggest that it is inequitable that he should be regulated under the fully constitutional, democratically promulgated County Ordinance. As for Cooper's newfound concern regarding Memphis' ability to "benefit from the ability to enforce a local and locally adopted ordinance instead of a generally applicable county ordinance, [and] enjoy the democratic benefit of seeing a law it had enacted . . . revived again," he need not worry. As Cooper has convincingly demonstrated, the County Ordinance addresses substantially all of the areas addressed by the Memphis Ordinance (and more), and regulates all of the adult businesses that the Memphis Ordinance was intended to cover. From this we can assume that Memphis' purposes will be fulfilled by the adoption and enforcement of the County Ordinance.[6]

Finally, the district court found that Cooper failed to identify any exceptional circumstances that would warrant relief under Rule 60(b)(6). We agree. Under this Court's precedent, a showing of "something more" or different is required for relief under Rule 60(b)(6). Cooper presents no additional or different facts or arguments to support his motion under this section. Therefore, relief is properly denied under Rule 60(b)(6).

---

purely equitable reasons. We have held that "a consent decree designed to remedy violations of federal law is not a private contract; it is a judicial decree enforcing rights created by federal law through means agreed upon by the parties. So if a change in law eliminates the rights and duties the consent decree is designed to enforce, then it should not be enforced simply because the parties agreed to it." *Brown v. Tennessee Dept. of Finance and Admin.*, 561 F.3d 542, 546 (6th Cir. 2009). Thus, under Rule 60(b)(5), the private interests as between the parties to the action are not alone determinative of the issue of the proper enforcement of federal law.

[6]Notably, the City's position is not only that it has no continuing interest in enforcing the Memphis Ordinance, but also that it would be unable to enforce the ordinance because of intervening changes to the jurisdictional laws applicable to Tennessee municipal courts. Cooper counters that he is prepared to file a writ of mandamus to force the City to enforce the Memphis Ordinance. That Cooper would have to force Memphis, seemingly in contravention of law, to enforce the ordinance severely undercuts his argument that the equities favor allowing Memphis to locally regulate adult businesses.

## CONCLUSION

Cooper has failed to demonstrate that either equities or intervening changes in law favor relief from judgment of the consent judgment with the City of Memphis. We therefore **AFFIRM** the district court's decision.

---

**CONCURRING IN PART AND CONCURRING IN THE JUDGMENT**

---

KETHLEDGE, Circuit Judge, concurring in part and concurring in the judgment. I agree with the court that we have jurisdiction here. I respectfully disagree, however, with the court's conclusion on the severance issue, since I think it implausible that the shareholder-disclosure provision was a *sine qua non* for the 1991 Ordinance's enactment. I also disagree with the court's view that the equities are not dispositive here. As an initial matter, all of the court's commentary in footnote 5 is dicta, since the court decides the case on severance grounds rather than equitable ones. Otherwise, I think it was the plaintiffs' burden to show that continued enforcement of the judgment would be "detrimental to the public interest." *See Horne v. Flores*, 129 S. Ct. 2579, 2593 (2009). They have not come close to making that showing here. I therefore concur in the court's discussion of the jurisdictional issue, and concur in the judgment as well.